UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELBERT BARNETT,<br><br>        Plaintiff,<br><br>    v.<br><br>R. FISHER, JR.,<br><br>        Defendant. | Case No. 1:17-cv-01361-DAD-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 42, 43) |

Before the Court are the parties' cross-motions for summary judgment. (Docs. 42, 43.) For the reasons set forth below, the Court recommends that Defendant's motion be granted and that Plaintiff's motion be denied.

**I.    LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the

1   absence or presence of a genuine dispute, or that an adverse party cannot produce admissible
2   evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears
3   the burden of proof at trial, "the moving party need only prove that there is an absence of
4   evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,
5   477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

6   Summary judgment should be entered against a party who fails to make a showing
7   sufficient to establish the existence of an element essential to that party's case, and on which that
8   party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of
9   proof concerning an essential element of the nonmoving party's case necessarily renders all other
10  facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,
11  "so long as whatever is before the district court demonstrates that the standard for the entry of
12  summary judgment … is satisfied." *Id.* at 323.

13  If the moving party meets its initial responsibility, the burden then shifts to the opposing
14  party to establish that a genuine issue as to any material fact does exist. *See Matsushita Elec.*
15  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the
16  existence of a factual dispute, the opposing party may not rely upon the allegations or denials of
17  his pleadings but is required to tender evidence of specific facts in the form of affidavits or
18  admissible discovery material in support of its contention. *See* Fed. R. Civ. P. 56(c)(1);
19  *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.
20  2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary
21  judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., that
22  it might affect the outcome of the suit under governing law, *see Anderson v. Liberty Lobby, Inc.*,
23  477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,
24  630 (9th Cir. 1987), and that the dispute is genuine, i.e., that the evidence is such that a
25  reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250;
26  *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

27  In attempting to show a factual dispute, the opposing party need not prove a material fact
28  conclusively in her favor. It is sufficient that "the claimed factual dispute be shown to require a

jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). However, the opposing party must still produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

Finally, when "cross-motions for summary judgment are at issue," the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal quotation marks and citations omitted). But in evaluating each motion, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (citation omitted).

## II.   EVIDENTIARY MATTERS

In his motion for summary judgment, Defendant provided Plaintiff with the requirements for opposing the motion under Federal Rule of Civil Procedure 56. (Doc. 43-1.) Nevertheless, Plaintiff did not submit evidence in support of his opposition to the motion; and, he failed to reproduce the itemized facts in Defendant's statement of undisputed facts (Doc. 43-3) and to admit or deny those facts, pursuant to Local Rule 260. As a result, when considering Defendant's motion, the Court accepts Defendant's proffered facts as true, except where they are brought into dispute by evidence that Plaintiff provided in support of his own motion for summary judgment. *See Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1135-6 (9th Cir.

2001) (holding that the "court erred by failing to review the evidence that [plaintiffs] … submitted in support of their motion for summary judgment as evidence in opposition to [d]efendants' motions for summary judgment") (emphases removed).

In support of his motion for summary judgment, Plaintiff submitted two declarations from inmates at Valley State Prison. (Doc. 42 at 28-29, 31.) Defendant objects to a statement in one of the declarations as not being based on the witness's personal knowledge. (Doc. 45-1 at 2.) The Court sustains the objection. In general, the Court will consider the declarations as evidence, except those portions not based on the declarants' own personal knowledge or perception. Fed. R. Evid. 602, 701.

Finally, because Plaintiff is *pro se* and attests under penalty of perjury that the contents of his complaint are true and correct (Doc. 14 at 20), the Court also considers as evidence parts of the complaint that are based on Plaintiff's personal knowledge. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citations omitted).

## III.    SUMMARY OF FACTS

At the times relevant to this case, Mr. Barnett was incarcerated at Valley State Prison and housed in Facility B. *See* Pl.'s Compl. (Doc. 14); Pl.'s Mot. for Summ. J. (Doc. 42). On January 17, 2017, while walking to his housing unit from the dining hall, Plaintiff was attacked by Inmate Horn. Pl.'s Compl. 1; *see also* Def.'s Statement of Undisputed Facts ("SUF") ¶ 1 (Doc. 43-3 at 1). "[P]laintiff suffered severe … injuries" as a result of the attack. Pl.'s Compl. 13.

Prior to the attack, Plaintiff and Inmate Horn did not know each other and were not documented enemies. Def.'s SUF ¶¶ 2-3. Horn was not a participant in the Enhanced Outpatient Program (EOP) and was properly housed in Facility B. *Id.* ¶ 4.

According to his declaration, Inmate Lamons has "witnessed many inmate assaults on the way back from the dining hall." Lamons Decl. ¶ 2 (Doc. 42 at 31). However, before Plaintiff's attack, Defendant-Warden Fisher had no knowledge of any issues regarding inmate-on-inmate assaults in Facility B following release from the dining hall. Def.'s SUF ¶ 7. Defendant was not present during the time of the attack, and he had no knowledge that Horn would try to attack Plaintiff. *Id.* ¶¶ 5-6.

1          The Operational Procedures Manual required correctional staff to escort inmates to and
2   from the dining hall. Pl.'s SUF ¶ 1 (Doc. 42 at 11). However, officers failed to escort inmates as
3   required on the date that Plaintiff was attacked. *Id.* ¶¶ 2, 4. According to his declaration, Inmate
4   Denton, a former chair of a Men's Advisory Council (MAC), informed Warden Fisher in 2016
5   that correctional staff "continuously failed to escort … inmates from the dining hall," as required
6   by operational procedures. Denton Decl. ¶ 4 (Doc. 42 at 28-29). According to Denton, Fisher
7   responded, "I'll look into it;" "[h]owever, nothing changed." *Id.*
8          According to Warden Fisher's declaration, there were no "complaint[s] made during any
9   MAC meeting [Fisher] attended that correctional staff were not following escort policies" and
10  procedures prior to the date that Plaintiff was attacked. Fisher Decl. ¶ 10 (Doc. 43-6 at 3).
11  Defendant further declares he was not aware that any such policies or procedures "were not being
12  followed on Facility B" on that date. *Id.* ¶ 11.
13  **IV.     DISCUSSION**
14         Prison officials have a duty "to take reasonable measures to guarantee the safety of
15  inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corr.*
16  *Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33; *Hearns v.*
17  *Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner
18  "must show that … officials acted with deliberate indifference to the threat of serious harm or
19  injury." *Labatad*, 714 F.3d at 1160 (citation omitted). "[D]eliberate indifference entails something
20  more than mere negligence, … [but] something less than acts or omissions for the very purpose of
21  causing harm or with the knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison
22  official shows "deliberate indifference" to a threat of serious injury to an inmate when he "knows
23  of and disregards an excessive risk to inmate health or safety." *Id.* at 837.
24         The deliberate indifference standard includes both objective and subjective components.
25  As to the first, objective prong, the alleged deprivation must be "sufficiently serious." *Id.* at 834.
26  "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under
27  conditions posing a substantial risk of serious harm." *Id.* (citation omitted).
28         As to the second, subjective prong, deliberate indifference "describes a state of mind more

blameworthy than negligence" and "requires more than ordinary lack of due care for the prisoner's … safety." *Id.* at 835 (internal quotation marks and citation omitted). Deliberate indifference exists where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but [he] 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (internal quotation marks and citation omitted).

**A. Defendant's Motion for Summary Judgment**

Defendant argues that the undisputed evidence shows that he did not violate Plaintiff's Eighth Amendment rights. Def.'s Mot. for Summ. J. 10 (Doc. 43-2 at 10). The Court agrees. Viewing the facts in the light most favorable to Plaintiff, the facts fail to satisfy either the objective or subjective component of a deliberate indifference claim.

    i. <u>Objective Component</u>

The evidence fails to show that Plaintiff was at a substantial risk of serious harm on the date he was attacked. Plaintiff and Inmate Horn were not documented enemies, and Plaintiff did not know Horn. The attack appears to have been random. In his deposition, Plaintiff admits that Defendant could not have foreseen the attack. Pl.'s Dep. 67:19-24 (Doc. 43-4 at 9).

Plaintiff contends that correctional staff's failure to escort inmates from the dining hall as required by prison procedures placed him at a substantial risk of serious harm. Pl.'s Mot. Summ. J. 8-9. Plaintiff also asserts that Inmate Horn was a participant in the prison's Enhanced Outpatient Program; and he implies that, because of this, Horn's release into Facility B created a significant risk of violence. *Id.* 3-4.

As an initial matter, the undisputed evidence shows that Horn was never a participant in the EOP during his incarceration at Valley State Prison. Def.'s SUF ¶ 4. Hence, Plaintiff's contention that he was a substantial risk of serious harm rests on correctional staff's failure to

follow prison procedures regarding inmate escorts from the dining hall. Plaintiff seems to suggest as much when he states that, "The [q]uestion is not whether … defendants knew that the attacker was going to attack … plaintiff… the question is: was there a dining hall escort procedure in place, and did the defendants follow it?" Pl.'s Mot. for Summ. J. 8.

The Court finds that correctional staff's failure to follow the dining-hall-escort procedures does not show that Plaintiff was at a substantial risk of serious harm. Plaintiff states that "inmates are at a higher risk of inmate assaults" when "staff fails to follow their own Operational Procedures." *Id.* 3. Accepting this generalized statement as true, staff's failure to follow prison procedures, without more, does not show that Plaintiff was at a *substantial* risk of *serious* harm while walking back to his housing unit on January 17, 2017. *See Ager v. Hedgepath*, No. 5:11-cv-06642-EJD, 2014 WL 1266120, at *6 (N.D. Cal. 2014) (correctional officers' "violation of their own internal policy, … without more, does not go so far as to establish that [plaintiff] faced an objective substantial risk of serious harm"). Plaintiff presents no evidence, for example, that Horn was particularly assaultive or aggressive, or that inmate assaults were commonplace during dining-hall release.[1] Plaintiff's assertion that he was at a substantial risk of serious harm is therefore speculative, and such speculation is insufficient to establish an Eighth Amendment violation. *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) ("speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm") (citation omitted); *Marrero v. Rose*, No. 1:10-cv-00509-LJO, 2013 WL 2991295, at *6 (E.D. Cal. 2013) ("The possibility of harm is not equivalent to a substantial risk of harm.").

Plaintiff points to *Manzanillo v. Lewis*, 267 F. Supp. 3d 1261 (N.D. Cal. 2017) for the proposition that "moving in a group of unsupervised inmates, where prison procedures call for escorts and monitoring," placed him at a substantial risk of serious harm. Pl.'s Mot. for Summ. J. 7. However, in *Manzanillo*, the court noted that the plaintiff was housed in the Security Housing Unit (SHU) of the prison, a unit for inmates who "have severe disciplinary issues, convictions for

---

[1] Inmate Lamons, in his declaration, does state that he "witnessed many inmate assaults on the way back from the dining hall." Lamons Decl. ¶ 2. But he provides no additional context that would allow the Court to conclude that inmates faced a *substantial* risk of inmate-on-inmate violence during dining-hall release around the time of Plaintiff' attack. He does not provide the number of assaults he witnessed or the period of time during which he witnessed them.

1   assaults committed in prison, or are validated gang members and associates." 267 F. Supp. 3d at
2   1266. The plaintiff and the inmate who attacked him were, in fact, members of rival gangs, and
3   according to one defendant, "due to … gang rivalries … when you let two inmates out
4   unrestrained generally there was going to be a fight." *Id.* at 1272 (internal quotation marks and
5   citation omitted).

6   Here, though, there is no evidence that Plaintiff and Horn were members of rival gangs, or
7   evidence that inmates in Facility B were affiliated with rival gangs or otherwise particularly
8   assaultive. There is simply insufficient evidence before the Court to raise the risk of violence to
9   Plaintiff above the level of speculation.

10          ii.  <u>Subjective Component</u>

11  Even if Plaintiff were at a substantial risk of serious harm on the date he was attacked, the
12  evidence fails to show that Warden Fisher was aware of such a risk. As stated above, Plaintiff and
13  Horn were not documented enemies, and the two were properly housed in the same facility.
14  Def.'s SUF ¶¶ 2, 4. According to the undisputed facts, Defendant had no knowledge that Horn
15  would try to attack Plaintiff, and no knowledge of any issues regarding inmate-on-inmate assaults
16  during dining-hall release. *Id.* ¶¶ 6-7.

17  Plaintiff's sole evidence concerning Defendant's subjective awareness is Inmate Denton's
18  declaration that he informed Defendant of staff's failure to follow inmate-escort procedures, and
19  that Defendant replied that he would "look into it." *See* Pl.'s Mot. for Summ. J. 6. Even accepting
20  this as true, the evidence fails to show that Defendant knew that inmates faced a substantial risk
21  of serious harm, let alone that he failed to take reasonable measures to abate such a risk. There is
22  no evidence before the Court, for example, that Defendant knew that assaults were occurring on
23  Facility B due to staff's failure to escort prisoners, or that assaults or threats of assaults were
24  occurring during dining-hall release.

25  Viewing the facts in the light most favorable to Plaintiff, the facts fail to show that
26  Plaintiff was at an objectively substantial risk of serious harm on the date of his attack. The facts
27  also fail to show that Defendant was subjectively aware of a substantial risk of serious harm to
28  Plaintiff or inmates generally during dining-hall release. Defendant is therefore entitled to

judgment as a matter of law.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff contends that, because the undisputed facts show that correctional staff failed to follow dining-hall-escort procedures, and that Plaintiff was attacked during dining-hall release, summary judgment should be granted in his favor. *See* Pl.'s Mot. for Summ. J. 2, 10. For the reasons provided with respect to Defendant's motion for summary judgment, the facts, viewed in the light most favorable to Defendant, fail to show that Defendant was deliberately indifferent to Plaintiff's safety. Plaintiff's motion must therefore be denied.

### V.     CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the Court RECOMMENDS that Defendant's motion for summary judgment (Doc. 43) be GRANTED and that Plaintiff's motion for summary judgment (Doc. 42) be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of the Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 6, 2020**              /s/ Jennifer L. Thurston
                                      UNITED STATES MAGISTRATE JUDGE